## PEABODY COAL CO. v. NIXON et al.

(Circuit Court of Appeals, Eighth Circuit. August 7, 1915.
On Motion for Rehearing, October 1, 1915.)

No. 4361.

1. RECEIVERS ☞90—CONTRACTS—AFFIRMANCE OR DISAFFIRMANCE.

The contracts of the owner of the trust estate are not binding on the receivers until renounced, but, on the contrary, the receivers are not bound by a contract until they have affirmed it and assumed its burdens under the direction of the court.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 164–166; Dec. Dig. ☞90.]

2. RECEIVERS ☞90—AFFIRMANCE OR DISAFFIRMANCE OF CONTRACTS—ESTOPPEL.

Where receivers of a railroad, within the time allowed for affirming or disaffirming any of its contracts, petitioned the court for approval of their disaffirmance of a contract, there could be no claim of an affirmance by conduct or an estoppel against disaffirmance.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 164–166; Dec. Dig. ☞90.]

3. RECEIVERS ☞90—CONTRACTS—DISAFFIRMANCE—LIABILITY.

Receivers of a railroad which had contracted to purchase its coal at appellant's mine to not less than a specified amount, at a price fixed, who, on petition therefor and hearing by the court, were allowed to renounce the old contract, and who after notice of their intention to renounce remitted for the coal they received at $1 per ton, which amount appellant received as a credit on account of the old contract, were not liable as for the price fixed by the old contract after their notice to appellant that they would renounce it.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 164–166; Dec. Dig. ☞90.]

Appeal from the District Court of the United States for the Eastern District of Missouri; Walter H. Sanborn, Judge.

Petition by William C. Nixon and others, as receivers of the St. Louis & San Francisco Railroad Company, for an order approving their renunciation of a contract with the Peabody Coal Company. From an order of approval, the company appeals. Affirmed.

George F. Haid, of St. Louis, Mo. (James C. Jones and Lon O. Hocker, both of St. Louis, Mo., and Underwood & Smyser, of Chicago, Ill., on the brief), for appellant.

Edward T. Miller, of St. Louis, Mo. (William F. Evans, of St. Louis, Mo., on the brief), for appellees.

Before CARLAND, Circuit Judge, and LEWIS, District Judge.

LEWIS, District Judge. Receivers were appointed in a suit against the St. Louis & San Francisco Railroad Company on May 27, 1913, with power and authority to continue the operation of the railroad. Eight days later the court made an order in the cause giving the receivers six months within which to affirm or renounce any contract of the company. Within a month after their appointment a conference was had between a representative of the receivers and the vice-

president of appellant concerning a contract by which, in May, 1912, the coal company bound itself to furnish, and the railroad company to take and pay for, coal at an agreed price for twenty years. The result of this conference was a notification from the receivers to the coal company, on June 24, 1913, that they would not perform the contract on the part of the railroad company, but that they would renounce it, and they at once, on June 26th, presented a petition to the chancellor asking that their renunciation be approved. The petition bore the endorsement of approval of the master, and an order was entered giving the coal company leave to answer and be heard. The coal company answered opposing the petition. The matter was referred to the master under direction to hear the parties and report the facts and law and his conclusion and recommendations. The receivers thought that an understanding and agreement had been reached at the conference with the vice-president of the coal company by which they were to have the coal not on the terms fixed by the old contract but at a flat price of one dollar per ton f. o. b., and that a written agreement was to be prepared and signed to that effect. They prepared such a contract and submitted it to the coal company on the next day, but it refused to execute it. It took the position that the contract with the receivers was not to be executed until it could be ascertained what should be finally done with the old contract; but the receivers continued in their refusal to comply with the old contract. They accepted and took appellant's coal but remitted therefor at the rate of one dollar per ton. Appellant received and retained the remittances, but in each instance replied that it was credited on account and that the balance, in accordance with the terms of the old contract, was due.

On the hearing before the master it appeared that under the old contract the railroad company had bound itself to purchase and receive from the coal company f. o. b. mines for its fuel purposes not less than 450 and not more than 900 tons of mine-run coal per day produced from the mines of the coal company. The price for the coal was "to be determined by adding ten cents per ton to the average actual cost to the coal company per ton of coal 'produced' from all such mines during such month."

The contract set forth in detail the items which were to enter into the cost of production and the way in which the average actual cost of production per ton should be ascertained. The items thus entering into the price to be paid by the railroad company included rentals, royalties, depreciation, interest on part of the investment, insurance premiums, cost of maintaining, repairing and renewing plant (in part), wages and salaries of employés, payments made as damages, cost and attorneys' fees for claims for personal injuries to employés, for insurance against such claims, net cost of props, and all other supplies and material used during such month, wages and salaries of officers, and all other proper expenses usually chargeable to the operation of coal mines, all of which were to be distributed pro rata over the entire production at all of the coal company's mines, to which was to be added ten cents on each ton taken by the railroad company.

The first impression is, that this is unlike an agreement between parties dealing at arms length. The coal company was on the ground, the railroad company was not. It bought the supplies, hired and paid the labor, and did everything else about cost of production, and kept the books. There was the implied right to re-check, but that would be an additional expense and hardly satisfactory to a business man. The face of the contract was a representation that there was a profit of only ten cents a ton, but it turned out from the proof to be much more, as measured by the market.

The master began the hearing on September 3d following the reference. The coal company attempted to show and induce the master to believe that the old contract was beneficial to the receivers and ought to be affirmed, but the master found from the evidence that appellant's coal under the old contract would cost the receivers $1.25 per ton, that they could obtain the coal they needed in operation at $1.00 per ton and thus save annually about $50,000 to the trust estate. He recommended that an order be entered approving the renouncement of the contract. Exceptions were taken by the coal company to the master's report, they were overruled, and on December 4, 1913, the court made and entered the following order:

"It is hereby ordered that the petition of the receivers for leave to renounce the contract of the St. Louis & San Francisco Railroad Company with the Peabody Coal Company dated May 1, 1912, be, and the same is, hereby granted, that this renunciation shall take effect and be in force from and after the 24th day of June, 1913, that all the exceptions to the master's report except the first be, and the same are, hereby overruled and his report is in all other things confirmed and adopted."

Of the many errors assigned, the only one relied upon in the oral argument and brief is to that part of the order declaring the renunciation effective "from and after the 24th day of June, 1913"; it being urged that the renunciation should be of the date the order was entered, and that the receivers should be held to pay the old price up to that time.

The date thus fixed by the court corresponds with that on which the receivers notified the coal company that they would not perform the contract, but renounce it.

[1-3] We had occasion in another case (Ry. Co. v. Lusk et al., 224 Fed. 704, —— C. C. A. ——) at this term to observe that it is not the rule that the contract of the owner of a trust estate is binding on the receivers until renounced, but, contra, that the receivers are not bound by the contract until they have affirmed it and assumed its burdens under the direction of the court. We need not say much more. There can be no claim on the facts of an affirmance by conduct or an estoppel against renunciation. Spencer v. Exposition, 163 Ill. 117, 45 N. E. 250; Nelson v. Kalkhoff, 60 Minn. 305, 62 N. W. 335; Pub. Co. v. Beckwith, 167 N. Y. 329, 60 N. E. 642; Howe v. Harding, 76 Tex. 17, 13 S. W. 41, 18 Am. St. Rep. 17. The receivers were entitled to a reasonable time within which to investigate and determine what course they would take, for the engagements of the great railway system which the court took in hand were multitude. With this in mind the court granted them six months to act.

Within one month after their appointment they decided that the contract between appellant and the owner of the trust estate was burdensome and determined that it should be renounced, and immediately petitioned the court for an approval. They also gave notice within the month to appellant that they would not affirm the contract and assume its burdens, and continued thence to assert their renouncement until their action was confirmed by the court, which would have been doubtless granted shortly after their request but for the resistance of the appellant and its persistent effort to convince that the affirmance of the contract would be beneficial to the trust estate. The facts and the law are against the appellant. Ames v. Union Pac. Ry. Co. (C. C.) 60 Fed. 966, 970; Trust Co. v. Loan & Trust Co., 81 Fed. 254, 258, 26 C. C. A. 383; Hydraulic Co. v. Felsenthall, 116 Fed. 966, 54 C. C. A. 537; Electric Co. v. Whitney, 74 Fed. 664, 20 C. C. A. 674; Coy v. Trust Co. (D. C.) 198 Fed. 275, 280, and authorities cited in those cases.

The order appealed from must be affirmed.

## On Motion for Rehearing.

The petition for rehearing is based on the claim that the court in its opinion heretofore rendered misconceived the facts and their true import and deduced erroneous conclusions therefrom.

The claim is without foundation. We are satisfied with what we said in the opinion rendered and do not believe there was any misconception of facts or error in the conclusions drawn therefrom.

The petition is without merit and will be denied.