DICKINSON v. WILLIS et al.

(District Court, S. D. Iowa, C. D.   July 15, 1916.)

1. COURTS ⊜═501—ACTIONS AGAINST RECEIVERS—JURISDICTION.

Judicial Code (Act March 3, 1911, c. 231) § 66, 36 Stat. 1104 (Comp. St. 1913, § 1048) providing that a federal court receiver may be sued, without previous leave of the court which appointed him, "in respect of any act or transaction of his in carrying on the business connected with such property," applies only to suits brought for the purpose of imposing some liability on the receiver in respect to his acts.  As to all matters relating to the possession, control, and management of the property by the receiver, or the conduct of the business, the jurisdiction of the court which appointed him, and which has possession of the property through him, is exclusive.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 1409; Dec. Dig. ⊜═501.]

2. RECEIVERS ⊜═90—MANAGEMENT OF PROPERTY—ASSUMPTION OF CONTRACTS.

An executory contract made by a corporation is not binding on its subsequent receiver, unless he affirmatively assumes it.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 164–166; Dec. Dig. ⊜═90.]

In Equity.  Suit by Jacob M. Dickinson, receiver for the Chicago, Rock Island & Pacific Railway Company, against Paul Willis, Milo P. Smith, F. F. Dawley, and E. A. Johnson.  On motion for preliminary injunction.  Granted.

F. W. Sargent, of Des Moines, Iowa, for complainant.

F. F. Dawley, of Cedar Rapids, and E. A. Johnson, of Lisbon, Iowa, for defendants.

WADE, District Judge.  On the 20th day of April, 1915, the plaintiff, Jacob M. Dickinson, was appointed receiver for all of the prop-

erty and business of the Chicago, Rock Island & Pacific Railway Company by the United States District Court for the Northern District of Illinois. In the order of appointment it was adjudged and decreed that all parties whomsoever, and wheresoever located or domiciled, be strictly enjoined from in any manner whatsoever interfering with the receiver thus appointed in his operation, control, and management of the business or property of said railway company, which came into his hands by virtue of his appointment. By ancillary proceedings, the order of appointment was confirmed and entered of record in the United States District Court for the Northern District of Iowa and in the United States District Court for the Southern District of Iowa.

Some time prior to the appointment of the receiver as aforesaid, a controversy had arisen between employés operating trains on one of the branches of the Chicago, Rock Island & Pacific Railway Company, known as the "Short Line," and the Brotherhoods of Railway Enginemen, Conductors, and Trainmen; the employés as aforesaid being members of said organizations. This controversy involved certain rights of promotion in service, based upon what is termed "right of seniority." The employés brought an action in the district court of Linn county, Iowa, and procured a temporary injunction restraining the violation of the alleged right of seniority. Certain officers of the Brotherhoods and the Chicago, Rock Island & Pacific Railway Company were made parties defendant. Before the receiver was appointed, the case was dismissed as to the Chicago, Rock Island & Pacific Railway Company under a certain agreement, the meaning of which is now in dispute; the receiver contending that it only bound the railway company to comply with any order made by the district court in the injunction proceedings, while the employés insist that by the agreement the railway company bound itself to observe the terms of the temporary injunction pending appeal, even though the injunction was dissolved by the district court. Upon final hearing the district court of Linn county dissolved the temporary writ of injunction and denied the relief sought by the employés. An appeal from this decision was taken and is still pending. The receiver was never made a party to this case.

On May 24, 1916, Paul Willis, one of the defendants herein, brought another action in the district court of Linn county, Iowa, against the Chicago, Rock Island & Pacific Railway Company, C. W. Jones, general manager, F. J. Easley, assistant general manager, and A. E. Wallace, superintendent of the Minnesota division, alleging that said defendants in said cause had by the agreement heretofore referred to, at the time of the dismissal of the case against the railway company, agreed that they would keep the original temporary injunction in force, regardless of what ruling might be made upon final hearing, pending any appeal to the Supreme Court of Iowa, and until the case could be decided in the Supreme Court, and plaintiff prayed for a temporary injunction against said defendants, restraining them from interfering with the seniority rights as aforesaid.

It will be observed that this second case was commenced more than

a year after the appointment of the receiver, and at the time of the commencement of this suit the receiver was operating the railway lines, and the employés upon said lines including the general manager, assistant general manager, and superintendent, made parties in said action, were in fact the employés of the receiver. The district court of Linn county, Iowa, Hon. Milo P. Smith, Judge, issued a temporary injunction, and thereafter, on the 21st day of June, 1916, an amendment was filed in said case, making the receiver, plaintiff herein, a defendant in said case in the state court. This was the first time the receiver was in any manner made a party to any of the litigation.

Thereupon, and before any order was issued as to the receiver, this action was brought against Paul Willis, the plaintiff in the suit in Linn county, Iowa, Hon. Milo P. Smith, judge, who issued the injunction, and F. F. Dawley and E. A. Johnson, attorneys for Paul Willis, in said case, to restrain further proceedings in the state court, and to restrain the enforcement of the order made by the state court as aforesaid, upon the ground that the district court of Linn county, Iowa, had no jurisdiction of the receiver, and had no jurisdiction to issue any order with reference to the property, employés, or rights of the receiver affecting the possession, control, or operation of said railway system, or its property. Application was made for a temporary injunction, and such application was heard and submitted. The suit commenced by Paul Willis in the district court of Linn county, Iowa, is in effect an action to specifically enforce a contract alleged to have been made with the Chicago, Rock Island & Pacific Railway Company, through its general manager, by which it is claimed the railway company agreed, pending certain litigation between its employés, to maintain the then existing status with reference to what is termed "the right of seniority," which has to do with promotions in the service. The effect is, if enforced, to compel the receiver to employ for certain service certain persons who have acquired right thereto by reason of the length of service in the employment of the Chicago, Rock Island & Pacific Railway Company, and in effect the enforcement of the contract is a restraint upon the receiver to employ persons who have not acquired the proper standing by reason of service for the railway company.

[1] It is above stated that the action is to compel specific performance of this contract. The proceeding in the state court is for this very purpose; the effect of the injunction sought being, if granted, to restrain the violation of the contract. The temporary injunction was granted against the railway company and its manager and superintendent. Of course, the railway company is in no sense a proper party to the proceeding. The manager and superintendent are employés of the receiver, and the injunction granted is in effect a restraint upon the receiver, although he was not a party to the suit at the time the injunction was granted. The receiver has now been made a party to the suit, so that the question has to be determined as to whether the state court has jurisdiction to grant, by injunction against the receiver, specific performance of the contract made by the railway company.

Defendants rely upon section 66 of the Judicial Code, which permits a receiver to be sued without leave of the court which appointed him "in respect of any act or transaction of his in carrying on the business connected with such property." This statute was originally enacted in 1887 (24 Stat. 554, c. 373, § 3), and it is important to bear this date in mind in considering the expressions of the courts in cases decided since the enactment of the statute. This statute uses broad language, and yet it must be conceded that it is not comprehensive enough to include all actions against receivers. Regardless of the language employed by the court in appointing a receiver, and in directing him in the performance of the duties imposed upon him, there must be a certain class of cases as to which the court appointing the receiver has sole jurisdiction.

After a careful study of the cases I am satisfied that the line must be drawn between those cases which seek to recover a judgment against the receiver in the nature of damages and those cases which involve the possession of the property in the hands of the receiver, or the use of such property or the management thereof—the administration of the property in his hands. As to questions of possession, use, and management, I am satisfied that the appointing court, whether it be state or federal, has exclusive jurisdiction. In 34 Cyc. 416, it is said:

"The rule requiring leave to sue a receiver is sometimes modified by local statutes, and has been changed by act of Congress so far as the courts of the United States are concerned, by permitting a receiver appointed by those courts to be sued in another jurisdiction in cases where his act is drawn in question in transactions connected with the property in his hands, arising during the discharge of his duties as such official. Such provision does not authorize the bringing of all actions without limitation, but only such as are of the class mentioned; as to others, leave of court should be obtained. Thus a state statute providing that a receiver may be sued in respect to any act or transaction in carrying on the business connected with the property intrusted to him does not authorize a suit against the receiver, without leave, for the corpus of the estate, and the operation of the federal statute has been restricted in the same manner to causes in respect to acts or transactions of the receiver, and does not limit the power of the court which appointed the receiver to protect the property in his custody from external attack."

In White v. Ewing, 159 U. S. 36, 15 Sup. Ct. 1018, 40 L. Ed. 67, the court says:

"Any suit by or against such receiver, in the course of the winding up of such corporation, whether for the collection of its assets or for the defense of its property rights, must be regarded as ancillary to the main suit, and as cognizable in the Circuit Court, regardless either of the citizenship of the parties or the amount in controversy."

In Smith v. St. Louis & San Francisco Ry. Co., 151 Mo. 397, 52 S. W. 381, 48 L. R. A. 368, it is said:

"Receivers are officers of court to hold and manage property which is in the registry of the court, and persons having any claim to property so situated must submit their claims to the court that has obtained jurisdiction over the res, and the court will not permit its officers to be sued in any other tribunal without its consent. This is not only a law of comity among courts, but is a jurisdictional necessity, for it is manifest that two courts could not, acting separately, successfully manage the property or harmoniously distribute it.

Beach, Receivers (Alderson's Ed.) §§ 229-240; Kerr, Receivers (2d Ed.) p. 196 et seq."

Justice Moody, in Wabash Railroad Co. v. Adelbert College, 208 U. S. 38, 28 Sup. Ct. 182, 52 L. Ed. 379, says:

"When a court of competent jurisdiction has, by appropriate proceedings, taken property into its possession through its officers, the property is thereby withdrawn from the jurisdiction of all other courts. The latter courts, though of concurrent jurisdiction, are without power to render any judgment which invades or disturbs the possession of the property while it is in the custody of the court which has seized it. For the purpose of avoiding injustice which otherwise might result, a court during the continuance of its possession has, as incident thereto and as ancillary to the suit in which the possession was acquired, jurisdiction to hear and determine all questions respecting the title, the possession, or the control of the property. In the courts of the United States this incidental and ancillary jurisdiction exists, although in the subordinate suit there is no jurisdiction arising out of diversity of citizenship or the nature of the controversy. Those principles are of general application, and not peculiar to the relations of the courts of the United States to the courts of the states. They are, however, of especial importance with respect to the relations of those courts, which exercise independent jurisdiction in the same territory, often over the same property, persons, and controversies. They are not based upon any supposed superiority of one court over the others but serve to prevent a conflict over the possession of property, which would be unseemly and subversive of justice, and have been applied by this court in many cases, some of which are cited, sometimes in favor of the jurisdiction of the courts of the states, and sometimes in favor of the jurisdiction of the courts of the United States, but always, it is believed, impartially and with a spirit of respect for the just authority of the states of the Union" (citing many cases).

In Murphy v. John Hoffman Co., 211 U. S. 562, 29 Sup. Ct. 154, 53 L. Ed. 327, it is said:

"Where a court of competent jurisdiction has taken property into its possession, through its officers, the property is thereby withdrawn from the jurisdiction of all other courts. The court, having possession of the property, has an ancillary jurisdiction to hear and determine all questions respecting the title, possession, or control of the property. In the courts of the United States this ancillary jurisdiction may be exercised, though it is not authorized by any statute. The jurisdiction in such cases arises out of the possession of the property, and is exclusive of the jurisdiction of all other courts, although otherwise the controversy would be cognizable in them. Wabash R. Co. v. Adelbert College, 208 U. S. 38, 54, 28 Sup. Ct. 182, 52 L. Ed. 379, 386."

It will be observed that the foregoing cases were decided subsequent to the enactment of the statute relied upon by defendant; and it will also be observed, as the Supreme Court of the United States says, that this exclusiveness of jurisdiction is "not based upon any supposed superiority of one court over the others, but [that the principle] serves to prevent a conflict over the possession of property, which would be unseemly and subversive of justice." Wabash Ry. Co. v. Adelbert College, supra.

This case also points out "that those principles are of general application, and not peculiar to the relations of the courts of the United States to the courts of the states." The same rule would obtain were the receiver appointed in the state court of Linn county, and an action brought in this court which interfered with the ownership, control, or

management of the property. In O'Dell v. Batterman, 223 Fed. 292, 138 C. C. A. 534, the Circuit Court of Appeals, Second Circuit, says:

"Where a court of competent jurisdiction, whether federal or state, takes property into its possession through a receiver appointed by it, the property is thereby withdrawn from the jurisdiction of all other courts. As said by the Supreme Court of the United States in Murphy v. John Hofman Co., 211 U. S. 562, 569, 29 Sup. Ct. 154, 156, 53 L. Ed. 327 (1909): 'The court, having possession of the property, has an ancillary jurisdiction to hear and determine all questions respecting the title, possession, or control of the property. In the courts of the United States this ancillary jurisdiction may be exercised, though it is not authorized by any statute. The jurisdiction in such cases arises out of the possession of the property, and is exclusive of the jurisdiction of all other courts, although otherwise the controversy would be cognizable in them.' All other courts than the one which has the property in its possession are without power to render any judgment which invades or disturbs the possession of the property while it is in the custody of the court which has seized it. And in Wabash Railroad Co. v. Adelbert College, 208 U. S. 38, 54, 28 Sup. Ct. 182, 52 L. Ed. 379 (1908), the Supreme Court declared that for the purpose of avoiding injustice which otherwise might result, a court during the continuance of its possession has, as, incident thereto and as ancillary to the suit in which the possession was acquired, jurisdiction to hear and determine all questions respecting the title, the possession, or control of the property. The court added that in the courts of the United States this incidental and ancillary jurisdiction exists, although in the subordinate suit there is no jurisdiction arising out of diversity of citizenship or the nature of the controversy. The principles to which attention has just been called are of general application, and serve to prevent a conflict over the possession of property which would be unseemly and subversive of justice. They have been applied by the Supreme Court of the United States impartially, sometimes in favor of the jurisdiction of the courts of the states, and sometimes in favor of the jurisdiction of the courts of the United States."

In Investment Registry v. Chicago & M. Electric Railway Co. (D. C.) 204 Fed. 500, the court says:

"His counsel is in error in urging that he is asserting an undoubted legal right. The federal statute (Judicial Code [Act March 3, 1911, c. 231] § 66, 36 Stat. 1104 [U. S. Comp. St. Supp. 1911, p. 155]), in relinquishing to parties and to other courts the right to institute and entertain, without leave, proceedings against a federal court receiver in respect of the conduct of their business, has reserved to the appointing courts sole power over the matter of satisfaction of the rights determined in such other courts. Dillingham v. Hawk, 60 Fed. 497, 9 C. C. A. 101, 23 L. R. A. 517; St. Louis S. W. Ry. v. Holbrook, 73 Fed. 112, 19 C. C. A. 385; Mo. Pac. Ry. v. Tex. Pac. Ry. Co. (C. C.) 41 Fed. 314; Willcox v. Jones, 177 Fed. 870, 101 C. C. A. 84; Tex. & Pac. Ry. Co. v. Johnson, 151 U. S. 81, 14 Sup. Ct. 250, 38 L. Ed. 81."

This quotation, I think, indicates something of the proper limitation of the statute in controversy, by holding that the statute "reserved to the appointing courts sole power over the matter of satisfaction of the rights determined in such other courts."

Defendants assume that the language of section 66, "But such suit shall be subject to the general equity jurisdiction of the court in which such manager or receiver was appointed so far as the same may be necessary to the ends of justice," means that the appointing court has jurisdiction only when in the individual case it may be determined upon investigation that the ends of justice will not be attained in the state courts. Congress could not have meant this. Congress did not assume that in any case a party could not obtain justice in the state

courts. Congress certainly never intended that the question of jurisdiction of the state court would have to be tried out in the federal court upon the question as to whether the receiver could obtain a just judgment in the court in which the action was brought.

What Congress meant was that "the matter of satisfaction of the rights determined in such other courts" was reserved to the appointing court. It was intended to give the right to bring an action in any court having jurisdiction against the receiver without previous leave of court in any case in which the suitor sought to fix a liability upon the receiver, which, after judgment, would still be subject to the equitable powers of the court appointing the receiver.

But in the case here involved the proceedings in the state court will be final. There will be nothing for the appointing court to act upon. It will have no power to review the validity of the injunction. It becomes effective at once, regardless of what hardship it may impose upon the receiver, and without reference to its effect upon the management of the business for which the receiver was appointed. It is final, and, if not observed by the receiver, he is in contempt of the court, and the court appointing him would have no power to relieve him from proper penalty.

In Durand v. Howard, 216 Fed. 585, 132 C. C. A. 589, L. R. A. 1915B, 998, the Circuit Court of Appeals, Second Circuit, says:

"It is generally considered to be a matter within the discretion of the court whether it will determine for itself all claims of or against the receiver, or will allow them to be litigated elsewhere. In Porter v. Sabin, 149 U. S. 473, 13 Sup. Ct. 1008, 1010, 37 L. Ed. 815 (1893) the Supreme Court speaking through Mr. Justice Gray, said: 'When a court exercising jurisdiction in equity appoints a receiver of all the property of a corporation the court assumes the administration of the estate, the possession of the receiver is the possession of the court, and the court itself holds and administers the estate, through the receiver as its officer, for the benefit of those whom the court shall ultimately adjudge to be entitled to it. Wiswall v. Sampson, 14 How. 52, 65, 14 L. Ed. 322; Peale v. Phipps, 14 How. 368, 374, 14 L. Ed. 459; Booth v. Clark, 17 How. 322, 331, 15 L. Ed. 164; Union Bank v. Kansas City Bank, 136 U. S. 223, 10 Sup. Ct. 1013, 34 L. Ed. 341; Thompson v. Phœnix Ins. Co., 136 U. S. 287, 297, 10 Sup. Ct. 1019, 34 L. Ed. 408. It is for that court in its discretion, to decide whether it will determine for itself all claims of or against the receiver or will allow them to be litigated elsewhere. It may direct claims in favor of the corporation to be sued on by the receiver in other tribunals, or may leave him to adjust and settle them without suit, as in its judgment may be most beneficial to those interested in the estate. Any claim against the receiver or the corporation the court may permit to be put in suit in another tribunal against the receiver, or may reserve to itself the determination of; and no suit, unless expressly authorized by statute, can be brought against the receiver without the permission of the court which appointed him. Barton v. Barbour, 104 U. S. 126, 26 L. Ed. 672; Texas & Pacific Ry. v. Cox, 145 U. S. 593, 601, 12 Sup. Ct. 905, 36 L. Ed. 829."

It is true that in most of the foregoing cases questions of property were involved, but I see no distinction between the possession of property and the management of property so far as the questions here involved are concerned. If the district court of Linn county, Iowa, has the power to prescribe the class of persons who shall be employed by the receiver, then it has the power to prescribe how many hours a day they shall work, if it were claimed that a contract therefor was made

with the railway company; it has power in a proper case to restrain the receiver from employing members of Brotherhoods, or the reverse. It would also have power, upon presentation of a proper contract made with the railway company, to prescribe by injunction the number of trains that should be run, and the crossings that should be maintained, and the rentals that should be paid, and to enforce mostly any other condition affecting the manner in which the receiver shall conduct the business of his office.

[2] The Circuit Court of Appeals of this Circuit (Eighth) holds that the appointment of a receiver terminates all executory contracts. In Kansas City Southern Railway Co. v. Lusk, 224 Fed. 704, 140 C. C. A. 244, it is said:

"It is well not to lose sight of the question which the District Court had before it. It was simply whether the court in its discretion and as a business proposition would continue to perform the contract of 1898. The contract was not one binding on the receivers until renounced, but was one not binding on them until assumed under the direction of the court."

The same court in Peabody Coal Co. v. Nixon, 226 Fed. 20, 140 C. C. A. 446, says:

"We had occasion in another case (Railway Co. v. Lusk et al., 224 Fed. 704 [140 C. C. A. 244]) at this term to observe that it is not the rule that the contract of the owner of a trust estate is binding on the receivers until renounced, but, contra, that the receivers are not bound by the contract until they have affirmed it and assumed its burdens under the direction of the court."

In this case there was a contract made by the railroad company with the coal company for 20 years, only about one year had expired when the receivers were appointed, and the court appointing the receivers authorized them to renounce the contract.

As applied to the controversy before the court, these cases clearly indicate that as to those agreements and contracts and obligations entered into by the railway company, which are still executory, the appointing court has a large discretion, to be exercised in view of the effect which the enforcements of the contracts would have upon the conduct of the affairs of the receivership; and it must be recognized that no other court, except the appointing court, can have that broad knowledge of the affairs of the receivership which would enable it to direct, either by affirmative order or by injunction, the method of management of the business which the receiver should be compelled to employ.

I am not passing upon the question as to whether this court, not being the appointing court (except as to ancillary appointment), has jurisdiction to try the question involved in the case in Linn county; but, under the foregoing authorities, I am satisfied that this court has jurisdiction to restrain the defendants from continuing the proceedings in the district court of Linn county. This holding is not agreeable to this court. No court is disposed, except upon most urgent necessity, to restrain proceedings in another court; but upon most careful consideration there is no other course open to me. I have in no manner considered the merits of the contention made in

the lower court. I have given consideration only to the question of jurisdiction.

It is proper that I should say in this connection that the specific questions presented to this court have not been presented to the state court, inasmuch as the receiver has not yet appeared therein. The position of plaintiff herein is much stronger than in many of the cases referred to, because of the broad language employed by the court in his appointment, and the directions given, and the restraining orders entered; but, aside from all this, I am satisfied that the rule contended for by the plaintiff obtains, and it will be so ordered, and temporary injunction will issue as prayed.