### MENKE et al. v. WILLCOX et al.

(District Court, S. D. New York. March 9, 1921.)

1. **Receivers ⬡90—Mere inaction not adoption of contract.**
Mere inaction of receivers, where they do not enjoy any benefits from assets cum onere, is never of itself an adoption of a contract, though it may endanger their right to adopt, and in order to be bound they must positively indicate their intention to take the contract over.

2. **Receivers ⬡90—Intention to adopt contract indicated by retaining assets.**
The intention of receivers to adopt a contract may be indicated by remaining in enjoyment of assets without dissent.

3. **Receivers ⬡90—Of exporter held not to have adopted his contract of purchase.**
Receivers of an exporter, who wrote the seller of goods to such exporter, asking the seller to cancel the exporter's order, *held* not to have adopted the contract for purchase of the goods made by the exporter, either by such letter or by an earlier adoption, suggested and evidenced by the letter.

At Law. Action by William Menke and others against William R. Willcox and others, as receivers. Verdict for defendants.

This is an action at law upon the assumed adoption of a contract by the defendants as receivers. By consent the parties agreed to a trial before a jury of one and at the conclusion of the evidence each side moved for a direction of the verdict. The court took the case under advisement.

William J. Farrell was an exporter doing business in the city of New York, and on the 5th day of April, 1920, his creditors filed the usual creditors' bill in sequestration with his consent, alleging that his affairs were in confusion and his assets likely to be dissipated by repeated executions and attachments, by which the rights of the creditors would be injured. Upon the bill and consent the defendants were appointed receivers on that day, with power to continue the business in their discretion for a time extending beyond the events hereinafter set forth.

A few days before January 20, 1920, one O'Sullivan, an employee of Farrell, made an oral contract with Webber, an employee of the plaintiffs, and on that day Farrell signed and delivered a written "confirmation," agreeing to purchase "120 pieces each, about 30 yards style 4281 taffeta, at $2.75 per yard." The "confirmation" also contained the terms of payment, a full description of the goods, how they should be packed, and the time of shipment. Of the 120 pieces so ordered, the plaintiffs delivered 28 pieces to Farrell before the receivers were appointed. After their appointment, Webber, representing the plaintiffs, had talks on the telephone with O'Sullivan, and some time in April came to see Mr. Eggers, one of the receivers. Webber kept asking for

shipping instructions for the goods, which were then packed and ready for delivery f. a. s. New York, as required by the contract; but in these interviews the receivers gave no instructions, and did not declare their decision in any other way to adopt or renounce the contract. On June 4, 1920, at the request of O'Sullivan, the plaintiffs sent a bill or "invoice" to the receivers, describing 90 pieces of silk of the kind required by the contract and billed to the receivers personally. The contract called for 92 pieces, not 90; but the difference had been waived by O'Sullivan upon Webber's statement that 2 of the pieces reserved had proved defective. Eggers saw this bill shortly after its delivery, but took no action upon it, except by cabling to his South American correspondents to see whether the goods could be profitably resold in Brazil.

No other transactions of any moment took place between the parties until August 7, 1920. On that day the defendants wrote a letter to the plaintiffs, of which the following is a copy:

"Gentlemen: The receivers do not acknowledge any responsibility or adopt any contract or other transaction of William J. Farrell except as expressly and specifically stated by them. [In print.]

"In reference to your invoices of June 4th, covering the balance of merchandise due us against order No. 21551, as your Mr. Webber knows when he was down to our office on various occasions regarding the disposition of this matter, the customer has refused to accept the first shipment of the merchandise.

"We have done all we possibly could to get them to accept, and have cabled them direct, as well as to our agents, and also to the bank, who has taken a special interest in this matter.

"Their taking the matter up as above has been of no avail, and we are now in receipt of advice from our agent, requesting us to cancel the order.

"We would appreciate your co-operation in this matter and cancel this order, letting us have a credit memo. covering your bill by return mail.

"We dislike very much to ask you to cancel this invoice; but, in view of the unfortunate situation that we are in, we trust you will comply with the request as above.

"Thanking you for the many past favors which you have done for Mr. William J. Farrell and ourselves, we are

"Yours very ,truly,          William R. Willcox and Herman H. Eggers,
                                       "As Receivers of William H. Farrell,
"JWB  O'S.EA.                          By W. R. Willcox, Receiver."

To this letter the plaintiffs replied on August 10th, declining to "co-operate" in sending a credit memo. for their bill of June 4th and asking for remittance. On August 13th the defendants answered the plaintiffs' letter of August 10th, declaring that they had "elected not to execute this contract," and with this the transaction ended.

The plaintiffs pleaded three causes of action: First, for goods sold and delivered; second, upon an account stated; and, third, under section 144 of the Personal Property Law (Consol. Laws, c. 41), which provides that the seller may sue for the purchase price in certain contingencies. The defenses were that the defendants had never adopted or ratified the contract, and that, if they had, no action lay for the purchase price, but only for damages, which had not been proved.

Leonard Klaber, of New York City, for plaintiffs.
Walbridge S. Taft, of New York City, for defendants.

LEARNED HAND, District Judge (after stating the facts as above). [1, 2] The defendants knew of the contract some time during April, the exact day being unknown, and took no action upon it for over three months. It is possible that this was more than a reasonable time, and, if so, had they eventually adopted it, the plaintiffs conceivably might have been released; but the mere inaction of receivers, where they do not enjoy any benefits from assets cum onere, is never of itself

an adoption, though it may endanger their right to adopt. In order to be bound, they must positively indicate their intention to take it over. Peabody Coal Co. v. Nixon, 226 Fed. 20, 140 C. C. A. 446 (C. C. A. 8). That intention may be indicated by remaining in enjoyment of the asset without dissent. Link Belt Machinery Co. v. Hughes, 174 Ill. 155, 51 N. E. 179. But in such cases it is only because an assent may in fact be so implied. Indeed, the receiver may perform some part of the contract himself, experimentally, without becoming bound. Butterworth v. Degnon Contracting Co., 214 Fed. 772, 131 C. C. A. 184 (C. C. A. 2).

[3] On the 7th of August, therefore, the receivers were free to adopt or renounce the contract as their interests dictated. Their letter of that date did neither one nor the other. It merely requested that the order be canceled, which would have relieved them of any decision at all, and Farrell's estate of any claim for damages. In so far as it indicated anything at all as to their own position, it was a renunciation. Besides, the printed matter at the beginning of the letter, which expressly warned the recipient that the receivers would not adopt any contract of Farrell unless they "expressly and specifically" so stated, forbade the letter from being taken as an adoption.

The plaintiffs argue that, even so, the language of the letter presupposes an earlier adoption of the contract. To read it so is to ignore the receivers' patent purpose. They wanted the estate to be free from the contract altogether, and did not by implication concede that they had themselves theretofore adopted it, which would in fact have been untrue. All that they had done, meanwhile, was to ascertain whether they could resell the goods, a course they had a right to adopt, though at the risk of a termination by the plaintiffs before they might decide. This suggestion of the defendants the plaintiffs rejected by their letter of August 10th, erroneously assuming that the defendants' letter of August 7th was either an adoption or the evidence of prior adoption. To this interpretation of their letter, however, the defendants did not accede, for on the 13th they answered that they had not elected to execute the contract.

It is urged that the result is unjust to the plaintiffs, but this is incorrect. They had it always in their power to require the receivers to elect, and, this being a commercial contract, the time given would have been very short. Instead, they probably supposed that the receivers' Brazilian agents could place the goods so advantageously that they would adopt the contract, which was a good bargain for the seller. Having failed in this anticipation, they now attempt to hold the receivers who never suggested in any way that they would adopt. I can see no injustice in the failure of this attempt.

Verdict for defendants.