## DOLD PACKING CO. v. DOERMANN et al.

(Circuit Court of Appeals, Eighth Circuit. September 7, 1923.)

### No. 6293.

1. **Corporations �köö560(7)—Receiver's right to maintain action no greater than that of corporation.**

   A receiver's right to maintain an action to cancel a lease of property of the corporation under receivership was no greater or different than the right of the corporation.

2. **Corporations �köö560(7)—Receiver not entitled to maintain stockholders' action.**

   The appointment of a receiver does not invest him with the rights of the stockholders as such, and any cause of action which they might have had independent of the corporation cannot be instituted and carried on by the receiver.

3. **Corporations �köö560(7)—Stockholders not entitled during receivership to maintain causes of action belonging to corporation, right to sue being vested in receiver.**

   Stockholders have no right during receivership to institute and maintain causes of action which belong to the corporation, the right to maintain such actions being vested in the receiver.

4. **Corporations �köö560(12)—Evidence held not to show that lease of property was inequitable or improvident.**

   In suits by a receiver and stockholders of a packing company, having no marketing facilities, to set aside a lease of corporate property to a corporation having marketing facilities, evidence *held* not to sustain a finding that the lease was inequitable and improvident.

5. **Contracts �köö53—In absence of fraud, contract not set aside for improvidence.**

   Generally, a contract will not be set aside for improvidence, unless the improvidence or inadequacy of consideration is so great as to furnish of itself convincing evidence of fraud.

6. **Contracts �köö261(2)—Minor breaches of contract no basis for rescission.**

   Breaches of a contract in minor respects afford no basis for rescission, the proper remedy being an action for damages.

7. **Contracts �köö266(1)—Restitution of benefits condition to right to cancel.**

   As a condition to a rescission and cancellation of a contract, the complaining party must make restitution of the benefits which he has received under the contract.

8. **Corporations �köö387(3)—Violation of statute requiring corporation to give stockholders notice that lease would be considered at meeting held not objection available to corporation or its receiver.**

   Neither a corporation nor its receiver can maintain an action to cancel a lease of its property because of a failure of the corporation to give notice to stockholders that the lease would be considered at the meeting at which it was ratified, as required by a Maine statute, as the purpose of the statute was solely for the protection of stockholders, especially where the corporation agreed to have the lease submitted to and ratified by its board of directors and its voting stockholders.

9. **Estoppel �köö90(6)—Stockholders waiting 14 months, during which time lessee had expended large sums of money, estopped to question validity of lease.**

   Where lessee of corporate assets went into open, notorious possession, began operation of the leased plant, spent large sums of money, and notices of the lease were published in newspapers and sent through the mails to the stockholders, *held*, that stockholders who remained silent for 14

months were estopped from bringing suit to set aside the lease because of a failure of the corporation to give notice to them that the lease would be considered at the meeting at which it was ratified.

10. **Corporations** ☞657(5)—Lease to foreign corporation, executed prior to filing of certificate, not canceled when certificate filed prior to taking possession.

A lease to a foreign corporation will not be canceled at the instance of lessor's stockholders, under a Nebraska statute prohibiting a foreign corporation from engaging in business until it has filed a certificate as to agent and place of business, because the foreign corporation filed its certificate after the execution of the lease, but prior to taking possession of the plant operated under the lease.

11. **Corporations** ☞560(7)—Receiver must bring suit against third person, when not party to receivership suit.

Where lessee of corporate property is not a party to receivership suit, the receiver must proceed against him by a suit in the ordinary way for cancellation of the lease, and cannot proceed by petition in the receivership suit.

12. **Receivers** ☞187—Writ of assistance will not issue against one not a party.

A writ of assistance awarded by a decree in a receivership cause will not issue against one who is not a party to that proceeding.

13. **Action** ☞57(2)—Consolidation of stockholders' suit and receiver's petition held error.

A consolidation of a stockholders' suit and a receiver's petition in the receivership suit to have a lease of corporate property set aside *held* reversible error.

14. **Receivers** ☞16—Court will not take possession of business affairs of others for reorganizing purposes.

While the court may approve a reorganization of the business affairs of property which it holds in receivership, agreed to by those who were interested in it, it will not take into its possession and hold the business affairs of others, for the primary purpose of reorganizing that business.

Appeal from District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Suit by Frank H. Doermann and others against the Dold Packing Company. From the decree rendered, defendant appeals. Reversed, with directions.

This is a general statement of the situation and facts in this case:

In March, 1918, the Skinner Packing Company was organized as a corporation under the laws of Maine, with a capital stock of $2,500,000 divided into shares of $100 each, of which 20,000 shares were preferred stock without voting power and 5,000 shares common stock, to which was given the exclusive rights of voting at stockholders' meetings. The preferred stock was later increased to 75,000 shares. The purpose, among others, of the corporation was to engage in and carry on the slaughtering and marketing of live stock and all subsidiary branches now recognized as part of that business. Other purposes of the Skinner Packing Company, as shown by its articles of agreement and certificate of incorporation, are these: the construction and operation of tanneries; the construction and operation of stockyards, cold storage plants and warehouses; the production, manufacture and sale of all kinds of food products; the buying and selling of all kinds of cereals and the manufactured products thereof; the construction and operation of elevators, mills and granaries; the buying, leasing, owning, selling and mortgaging of real estate, and the buying, holding and selling of all characters of personal property, including trade-marks, copyrights, bonds and stocks in other companies and corporations. The Skinner Company was thus given broad and various powers. The promoters decided to construct a large pack-

ing plant at Omaha, Nebraska. They and the company were without the necessary funds for that purpose. They subscribed for more than 80% of the common stock, made small payments therefor, gave their notes for the balance and at once set about selling the preferred and a very small part of the common, principally to farmers in Nebraska and adjoining states, on the representation that the company would build and establish a packing plant at Omaha to be conducted independently of the so-called packers' trust, and thus afford a better and higher market for live stock. More than 65,000 shares of the preferred were disposed of in this way. Out of the money received, buildings with equipment to carry on a meat packing business were constructed at Omaha, so that the company opened its plant early in the spring of 1920 and began to purchase and slaughter cattle and hogs. In the course of a month it was discovered that heavy losses were being incurred and the plant was shut down. In October, 1920, the president of the company, who held more than 70% of the common stock, went to Buffalo, New York, and proposed to Jacob Dold Packing Company of that place that it take over the Omaha plant and operate it for a term of years on a profit-sharing basis, if a contract for that purpose could be agreed upon between the Skinner Company and the Dold Company. He was not willing to lease it outright. After preliminary discussion, he put his proposition in writing. The representatives of the two companies, after prolonged negotiations, reached terms of agreement, which were submitted to counsel learned in the law representing each side and a final draft was executed after it had been approved by the Board of Directors of the Skinner Packing Company. The Jacob Dold Packing Company was not a party to the contract. Under agreement with the Skinner Company, it caused the Dold Packing Company to be incorporated under the laws of Delaware and the contract as executed was between Skinner Packing Company and Dold Packing Company. The new company was owned by and its policies were, as provided in the contract, to be controlled by Jacob Dold Packing Company. That contract bears date October 26, 1920. By its terms the Skinner Company leased to the Dold Company for a term of four years beginning November 1, 1920, all of its plant and equipment (except a cold storage building and plant which stood separate and apart from the main plant and had cost $975,000) and gave Dold Company the right and privilege of renewal or extension of the lease for an additional term of three years. It bound the Skinner Company to fully complete its plant and equipment for the proper and economical conduct of the packing business, including any additional livestock storage facilities deemed proper by the Dold Company, and in default the Dold Company was given the right to complete the machinery, equipment and facilities of the plant, and the cost and expense thereof to the Dold Company should be immediately paid to it by the Skinner Company. The Dold Company agreed to conduct and carry on the packing business at the plant during the term of the lease, to procure and furnish the necessary capital for that purpose, and in no event should the capital invested in the operation of the business be less than $1,000,000. If earned as profits, the Dold Company was to receive 6% per annum as interest on its invested capital, but if not earned in any year the deficiency should not be charged to the Skinner Company nor should that item be computed as an expense nor carried over as a charge in succeeding years. Jacob Dold Packing Company was to receive $15,000 a year for the executive management of the Dold Company by the administrative staff of the former. The Skinner Company was required to keep the property insured and to pay all taxes and assessments levied against it. It reserved certain privileges in the purchase of products produced by Dold Company, to be delivered to the Skinner Company at the cold storage plant which it reserved, one of the purposes being that the Skinner Company might thus put out packing house products under its own brand and build up a trade under its name. There was provision for auditing the books of the Dold Company, the profits or losses thus ascertained to be divided equally between Dold Company and Skinner Company. The Skinner Company bound itself to cause the agreement to be submitted to and ratified by its Board of Directors and its voting stockholders. There was no express provision of forfeiture of the rights of Dold Packing Company under the con-

tract. It provided that if Dold Company did not operate the plant for a continuous period of six months, excepting causes beyond its reasonable control, then and in such event the Skinner Company had the right to terminate the lease upon thirty days' written notice. The Dold Company took possession of the plant on November 1, 1920. All of its $1,000,000 capital was paid up, and $250,000 additional as surplus for use in operation. On failure of the Skinner Company to make the needed changes and furnish additional equipment for efficient operation, the Dold Company did so, under the terms of the contract, at a cost to it of $143,000. It put the plant at once in operation and has continued to operate it under the terms of the lease and agreement, doing a business of $12,000,000 the first year, but sustained losses during that year of about $300,000, half of which and the $143,000 expended by it were charged to the Skinner Company under the contract but none of it has been paid to the Dold Company.

On April 15, 1921, five and a half months after Dold Packing Company took possession of the plant, Frank H. Doermann and five other stockholders in the Skinner Packing Company, owning in the aggregate 248 shares, filed a bill in the court below against the Skinner Packing Company charging fraudulent conduct on the part of the president of that company and his associates on the Board of Directors in the management of the company's affairs. They alleged that the president and other officers had been allowed and had been paid exorbitant amounts as salaries, that the president held a majority of the shares of the common stoock for which he had paid a small amount and had given his note in the sum of $245,000 for the remainder of the consideration of their purchase, that other associates of the president and directors in the company had had similar transactions and held large amounts of the company's common stock for which they had given their notes, that the president and his associates on the Board of Directors, on account of their pretended ownership of most of the common shares, which alone was given the right to vote, controlled and dominated the company and they had caused the company to enter into contracts with them as individuals, for their personal benefit, by the terms of which they were to receive large sums from the company with little or no consideration therefor. It charged that in October, 1920, the directors had authorized Skinner Company to make the contract with Dold Packing Company for the operation of the plant, that the Dold Company was then in possession of and operating the plant, that that contract had not been submitted to the stockholders for their approval, as required by the Maine statute, that the Skinner Company, after it put the Dold Company in possession of the main plant, operated the cold storage plant, which it retained, for a few weeks without success and at gross waste and extravagance, and thereafter organized another company to take over that storage plant, that creditors of the Skinner Company had brought suits and caused liens to be placed on the main plant and on the cold storage plant, which the president and other officers of the Skinner Company had failed to discharge. Other acts of mismanagement by those in control of the Skinner Company were stated and the bill prayed for the appointment of a receiver to preserve the assets of the company. The Skinner Company answered the bill at length, it denied the fraudulent conduct charged in the bill, alleged that dissension had arisen among the stockholders, which crippled the operations of the company, that the company had made a contract with Dold Packing Company, which it justified, alleged that the Skinner Company had tangible assets of a value in excess of $6,500,000 and an indebtedness of approximately $200,000, alleged that the cold storage plant reserved by the Skinner Company had not been and would not be transferred to another corporation, and then alleged that the officers and directors of the Skinner Company had become convinced that it was necessary, for the protection of the company and to stop and prevent agitation among stockholders and litigation, that a receiver should be appointed; 1st—to finance and re-establish the credit of the company and prevent loss of its property; 2d—to adjust disputes and prevent attempted coercion on the part of those having diverse interests and attempting to assert unjust and unfair claims against the company; 3d—to put an end, as far as possible, to the harassing litigation and utterances being

made and circulated against the company; 4th—to examine and determine the truth or falsity of said utterances and allegations, and to examine into and determine the legality of certain contracts and obligations which the company had assumed, and to consider and determine the effect of said contracts and obligations and the benefits thereof to the company; 5th—to examine and determine all questions relating to the voting control of the company; 6th—to restore the confidence and credit of the company with the public, and adjust and collect and make arrangements for the adjustment and collection of stockholders' notes which were then due the company. Attached to this answer was a statement of the assets and liabilities of the Skinner Company, from which it appears that its total assets at that time amounted to $8,270,700.82, of which amount $4,560,000 was represented by the packing and cold storage plants; notes receivable (principally stockholders'), $1,434,000; cash on hand, $47.862.24, and other named assets and securities. Its liabilities were approximately $200,000.

On the day the answer was filed (April 25, 1921), the court appointed a receiver: 1st—to finance and re-establish the credit of the company and prevent loss of its property; 2d—to adjust disputes and prevent payment of unjust and unfair claims against the company; 3d—to represent the defendant in all pending litigation or litigation hereafter commenced during the receivership; 4th—to examine into, and report to the court for proper action, the legality of all contracts and obligations which the corporation had assumed and also report to the court for proper action the effect of said contracts and obligations and the benefit thereof to the company; 5th—to examine and report to the court all questions relating to the voting control of the company; 6th—to take proper action under order of the court for the adjustment and collection in a reasonable and fair manner of the stockholders' notes which are now due and owing; 7th—to forthwith examine the books of the company as to the issuance of stock, the consideration therefor, and to report all instances where stock has been issued either without consideration or for inadequate consideration, in order that the court may order proper action; 8th—to investigate and report to the court whether or not notes or collateral originally given for stock have been or attempts have been made to surrender same to the makers for the purpose of relieving the signers from the obligation of paying for said stock; 9th—to investigate and report to the court concerning the declaration and payment of dividends by the company and the legality thereof, for proper order by the court. By the order, Keith Neville, of North Platte, Neb., sometime Governor of that state, was appointed temporary receiver of the company and of its property of whatsoever kind and description and wheresoever situated, including all buildings, etc., things in action, etc., and all assets of every kind; "and the said receiver is hereby fully authorized and empowered to institute and prosecute all such suits as may be necessary in his judgment for the proper protection of the property and trust hereby imposed in him, and likewise all actions instituted against him as receiver, and also to appear in and conduct the prosecution or defense of any suits now pending in any court against the defendant, the prosecution and defense of which will in the judgment of said receiver be for the proper protection of the property placed in his charge or the interests and rights of creditors connected therewith."

Two months after the appointment of the receiver he made a settlement with the president of Skinner Company in which the 3,504 shares of common stock then held by the president were assigned to the receiver. In consideration therefor he paid the president $5,000 in cash, surrendered to him his note to the company for $245,000, gave him $60,000 of stock in a baking company held by the Skinner Company and cancelled certain contracts between the president and the Skinner Company. (The receiver later testified that he thought the president could have easily paid his note for $245,000, which he turned over to him in the settlement, and that he made the settlement because he wanted to get rid of dissension among the stockholders.) The receiver also negotiated a similar transaction with Dr. Gilmore, an associate of the president, in which Gilmore surrendered the common stock which he held in the company and the receiver cancelled and gave to him a note of

Gilmore for $25,000 held by the Skinner Company. The proceedings in the receivership cause were entered on the court records as No. 270—In Equity.

After the occurrence of all of the foregoing, the Dold Packing Company remained in possession of the Omaha packing plant and continued to operate it under the terms of its contract; and thereafter, on November 5, 1921, Neville as receiver filed an application and petition in the receivership cause, No. 270 —In Equity, against the Dold Packing Company wherein he attacked the validity of its contract with the Skinner Packing Company for the reasons set out in his petition. He alleged that the Dold Company had operated the plant since November 1, 1920, and that up to September 30, 1921, it had sustained a loss in operation of approximately $275,000, that it claimed to have made alterations, changes and repairs and to have installed additional machinery and equipment at an expense to it in the approximate sum of $143,000, it charged breach of the contract by the Dold Company in the particular respects named in the petition; it alleged that the contract was unjust, unreasonable, inequitable and improvident and was not for the benefit or advantage of the Skinner Company, and that if it was not abrogated and ended all of the property of the Skinner Company would be absorbed by the Dold Company; it alleged that a fair and reasonable value of the property in the possession of the Dold Company was $3,250,000 and its reasonable annual rental was the sum of $225,000, beginning November 1, 1920; that the contract should be annulled and the Dold Company adjudged to pay that rental; that he had notified the Dold Company that he would not be bound by the contract and had repudiated it and made demand on the Dold Company to vacate the premises which it had refused to do on its claim that the contract is a valid and binding one and its possession and operation of the plant is lawful; he alleged further that the Skinner Company was induced to make and enter into the contract by false representations and statements of the Dold Packing Company and of Jacob C. Dold, and he prayed for a decree that the contract be declared null and void and of no effect and that the Dold Company be ordered to vacate the premises and surrender possession of the same to the receiver, and that it be required to pay rent from the date it took possession up to the time the receiver should be put in possession of the property, and that an accounting be taken between the parties to the contract.

On the filing of the petition, the court ordered that a subpœna issue for service on the Dold Packing Company and issued an order against the Dold Packing Company to show cause within twenty days why the prayer of the receiver should not be allowed. The Dold Company appeared and moved to dismiss the petition and application of the receiver on this ground, among others: "That the aforesaid petition and application of Keith Neville, Receiver, is filed in the action now pending in the District Court of the United States for the District of Nebraska, Omaha Division, in which Frank H. Doermann, et al., are complainants and the Skinner Packing Company is sole defendant, Number 270—In Equity, said Dold Packing Company not being and never having been a party to the aforesaid action." The motion was overruled, to which exception was saved. Thereafter the Dold Packing Company made answer and return to the order to show cause. It attacked the validity of the appointment of the receiver, it alleged that the reasons for the appointment of the receiver no longer existed and that the receivership should be terminated and the property of the Skinner Packing Company restored to the management of its Board of Directors, it denied fraudulent conduct in the making and execution of the contract, it alleged that the contract was fair, just and equitable in its terms, it denied any breach on its part in the respects charged or otherwise, it alleged that the contract was submitted both to the Board of Directors and to the stockholders of the Skinner Packing Company at an adjourned annual meeting and that it was ratified and approved by the entire stock represented and that the entire voting stock was represented at that meeting, it alleged that the stockholders in the Dold Packing Company had paid into that company $1,250,000 in cash for the purpose of operating the plant and complying with the terms of the contract on its part, that in operating the plant it had taken on additional obligations of approximately $1,000,000, that it had thousands of dollars invested

in the products of the plant which were in process of curing and that to deprive it of the benefits of the contract and dispossess it of the premises would result in very large losses to it, it alleged that immediately on the execution of the contract a notice was sent by the Skinner Packing Company to every one of its stockholders, including the preferred stockholders, notifying them of the contract agreement between the Dold Packing Company and the Skinner Packing Company for the operation of the plant and of the length of time that said contract was to continue, it admitted losses in operation of the plant for the year beginning November 1, 1920, and alleged that the packing industries throughout the country had during that time suffered large losses, that live stock purchased for slaughter at the plant had depreciated during the year to less than half its cost, it denied the right of the receiver to a decree annulling and cancelling the contract. On January 13, 1922, five of the stockholders who brought the receivership proceedings filed an independent suit against the Dold Packing Company, which was entered on the record as Cause No. 371—In Equity, wherein they made substantially the same allegations that were made by the receiver in his petition against the Dold Company as to failure of the stockholders to ratify the contract, that the Skinner Company had not complied with the Nebraska statutes before executing the contract and it was void, and they also prayed that the contract between the Skinner Company and the Dold Company be decreed null and void and of no force and effect, and for an order requiring the Dold Company to surrender possession of the packing plant. They later made the Skinner Packing Company a defendant in that suit. The court denied Dold Company's motion to dismiss that suit, ordered it to file answer in three days, and, over objections and exceptions of the Dold Packing Company, ordered that suit consolidated with Cause No. 270—In Equity. It answered and denied the charges made against it. The court permitted the remaining stockholder who was a complainant in the receivership cause to join with the receiver in his petition against the Dold Company.

Thereafter the court, of its own motion, referred the consolidated cause to a Special Master to make report on the law and the facts; and before the Master proceeded, twenty-four stockholders, owning in the aggregate 466 shares of the common and 312 shares of the preferred, were permitted to intervene on a verified petition in which they represented that the receiver had been appointed upon the petition of six stockholders holding less than 1% of the issued stock, that more than 99% of the issued and outstanding stock had not theretofore appeared nor been represented in the proceeding. They charged that the receivership was a collusive one, that it should have been restricted only to the preservation of corporate assets, that the reasons given for the appointment of the receiver no longer existed, that no effort had been made by the receiver to call a meeting for the election of new directors and officers, although there is now no reason why the company should not be turned back to its stockholders and the receivership dissolved, that the company is solvent, that the court has authorized the receiver to lease the cold storage plant, with an option to purchase, that the court has authorized the issuance of $300,000 in receiver's certificates and to mortgage the cold storage plant, all to the detriment of the stockholders, that the court has authorized the receiver to bring suit to cancel the lease contract with the Dold Packing Company and if he is successful therein it will be ruinous to the interests of the stockholders, and they prayed that the receivership be terminated, that the receiver be ordered to file a report and that the property be turned back to its stockholders.

On the proof taken, the Master reported to the court, as directed, his findings of fact and conclusions of law therefrom. All exceptions to the report taken by the Dold Company were overruled, it was approved and confirmed by formal order, without any reasons given therefor or opinion thereon by the court; and, as recommended by the Master, the court entered a final decree on October 5, 1922, ordering and adjudging the lease contract between the Skinner Packing Company and Dold Packing Company to be null and void and of no force and effect; that Neville, Receiver, was entitled to the immediate possession of the premises and property described in the lease contract

and restitution thereof was awarded to him; that the Dold Packing Company forthwith vacate those premises and surrender possession to the receiver, and, if necessary, writ of possession to issue to put him in possession. It was further decreed that the Skinner Packing Company was not liable to the Dold Packing Company for any losses suffered by it in the conduct of its business in operating the plant and that the Dold Company was liable for reasonable rent for the premises during its occupation. This appeal is brought by the Dold Packing Company from that decree.

C. A. Severance, of St. Paul, Minn., and F. H. Gaines, of Omaha, Neb. (Myron Learned, of Omaha, Neb., and Adelbert Moot, Louis L. Babcock, and Helen Z. M. Rodgers, all of Buffalo, N. Y., on the brief), for appellant.

Arthur F. Mullen and W. C. Fraser, both of Omaha, Neb. (William Ritchie, Jr., of Omaha, Neb., on the brief), for appellees.

Before LEWIS and KENYON, Circuit Judges, and TRIEBER, District Judge.

LEWIS, Circuit Judge, after stating the case as above, delivered the opinion of the Court.

It will be observed that the proceedings brought against the Dold Company by the receiver were not for the purpose of obtaining an order relieving him from performance of the lease contract during receivership, as a burden on the estate in administration detrimental to the rights of others having superior claims to the assets in his hands and which might be jeopardized if he were required to perform. Railway Co. v. Lusk, 224 Fed. 704, 140 C. C. A. 244; Peabody Coal Co. v. Nixon, 226 Fed. 20, 140 C. C. A. 446. What the receiver sought and what the court granted was a striking down of the contract, with its obligations, duties, rights and burdens, as though it had never been executed. It is further apparent from the facts in the case that the Skinner Packing Company was, at the time the receiver was appointed and at the time of the hearing, amply solvent. It had assets many times more in value than all of its indebtedness. The procedure instituted both by the receiver and stockholders cannot therefore be said to have been brought in behalf of or for the protection of creditors, nor can the order and decree of the court be regarded in any sense as having been made for that purpose. The largest creditor was the Dold Packing Company for money expended by it in additions and changes made in the plant under the terms of the contract; and while the court, on cancelling the contract, held that the Dold Company was not entitled to repayment of those sums in accordance with the contract, it did decree that the Skinner Packing Company should be held indebted to it for their reasonable value.

[1-3] It is obvious that the sole purpose of the proceedings brought by both receiver and stockholders was to get rid of the lease contract for the supposed benefit of the Skinner Packing Company and its stockholders, and the decree can have no other purpose and effect. The distinction between the right of a receiver to elect not to bind the receivership to the performance of existing executory contracts and thus burden assets in his hands, to the detriment of those having superior rights thereto, and his right to maintain an action to cancel and annul such a

contract, is broad and plain. They rest on entirely different principles. Under the broad powers of his appointment, we assume that he had a right to maintain his action, but his rights in that respect were no greater or different than those of the Skinner Packing Company. In making his case he stood in the shoes of the Skinner Company. He brought his petition in behalf of that company, and he notified the Dold Company by letter in July, 1921, that he would not be bound by the lease contract and that he would ask the court to direct him to take the necessary action to protect the interests of the Skinner Packing Company and its stockholders. His appointment did not invest him with the rights of the stockholders as such and any cause of action which they might have had independent of the corporation itself could not be instituted and carried on by him. Conversely, stockholders had no right to institute and maintain causes of action which belonged to the Skinner Packing Company. The order of appointment of Neville invested him with the right to maintain such actions. He charged in his petition against the Dold Company filed in the receivership cause on November 5, 1921, that there had been fraudulent conduct and false representations on the part of the Dold Company and by others in its behalf in procuring the execution of the lease contract of October 26, 1920, that the contract was unjust, inequitable and improvident, that the Dold Company made changes and alterations in the plant without giving the Skinner Company notice thereof and opportunity to pass on the necessity therefor, that it had injured and damaged the plant, that it had kept its books and records in such manner as to make it difficult to check the business conducted by it, that it had shown favoritism to the Jacob Dold Packing Company, that up to October 1, 1921, there had been an operating loss of approximately $275,000, one-half of which and the costs of improvements made by the Dold Company of approximately $143,000 were charged against the Skinner Company, that the credit of the Skinner Company had been destroyed and unless the contract were abrogated the Dold Company would absorb the entire property of the Skinner Company, and that the contract was entered into and possession of the plant taken by the Dold Company without complying with the provisions of the laws of Maine relative to notice to stockholders.

[4] The last subject-matter complained of by the receiver was not, as we will attempt to show, a subject of which he could make complaint, because the Skinner Company could not have done so. The charge of fraudulent conduct and false representations is out of the case, because there is not a particle of evidence that tends in the remotest degree to sustain that charge, and the Master found it unsustained. The record shows that the management of the Skinner Packing Company was wholly inexperienced in the industry. After the plant was constructed, a few weeks' trial demonstrated to them that they could not operate it. It was shut down, a large part of the employees and the organization were retained and kept going at heavy expense for several months in an effort to dispose of the product on hand, and then the president of the company sought to find some one who understood the business and would take over the plant. After consultation with packers in other cities, he went to Buffalo and sub-

mitted a proposition to Jacob Dold Packing Company. He was not willing that the plant should be leased outright, he insisted on a profit-sharing agreement and after lengthy negotiations and full consideration the executed contract was agreed upon. It was submitted to the Board of Directors of the Skinner Packing Company and approved by them, and at an adjourned annual meeting of stockholders all stock represented, consisting of more than 75% of that entitled to vote, approved the contract. The charges of fraud were utterly groundless and there was a total failure of proof. But the Master found that the lease contract was inequitable and improvident, so far as the Skinner Packing Company was concerned, and the court approved the finding. As we view the case, there is no competent evidence in the record to sustain that finding. From the report it appears to us that the finding was not based on testimony but is rather the personal opinion and conclusion of the Master reached by him from the terms of the contract and from the further fact, which had some support in the testimony, that the receiver could not re-finance the Skinner Company while the Dold Company remained in possession of the plant under the contract. As to the first, he points out that the Skinner Company turned over to the Dold Company property of the approximate value of $3,325,000, that the Dold Company was to take out each year, if earned, $60,000 as interest on its invested capital, that the Jacob Dold Company was to receive $15,000 a year for executive management, that the Skinner Packing Company was to pay insurance, taxes, and keep the property in repair, and receive half of the net profits and bear half of the net losses; and as to the second he says that the receiver has made repeated efforts to finance the Skinner Company but has been unsuccessful with the contract of October 26, 1920, in existence and that as long as that contract continues the company has no credit and the receiver cannot borrow money; that if the lease contract is gotten rid of, the receiver can finance the Skinner Company without difficulty. The Jacob Dold Packing Company is one of the oldest establishments of the kind in the United States. When its subsidiary, the Dold Company, took possession of the Omaha plant and began operation, the Jacob Dold Company extended to it its facilities for distributing and marketing its products. Its widely and well known brands, which gave assurance of quality, were used by the Dold Company and put upon the products of the Omaha plant so they would have a more ready access to the markets. The Jacob Dold Company turned over to the Dold Company a storage plant at Memphis in which those products might be received and dispensed to the Southern trade. It sent to the Omaha plant, without charge to the Dold Company, experienced men in its employ, heads of departments, to organize and instruct the working force in the Omaha plant in all of its departments, so that plant could be economically conducted. They spent weeks, and some of them months, there for that purpose, without cost or charge to the Dold Company except as it was covered in the charge of $15,000 per annum. When the Dold Company needed additional funds, they were obtained through the credit and assistance of the Jacob Dold Company to an amount at one time of $1,100,000 in addition to the invested capital and surplus of the Dold Company.

None of these things appear to have been considered or to have made any impression on the Master and the court in this finding. These services were of great value and indispensable. They were provided for under the contract. Neither did they consider, so far as we can find, that Skinner Packing Company was without standing or reputation in the industry and had no facilities for marketing its product and could not operate its plant, nor to the uncontradicted testimony of Jacob Dold that during his fifty years' experience in the meat packing business the year 1920–21 was the most disastrous to packers, and the percentage of loss on the amount of business transacted during the year was less at the Omaha plant than at the Jacob Dold Company's plant at Buffalo. The receiver testified that, in his opinion, the contract was inequitable and improvident, but he frankly stated that he knew nothing whatever about the packing business,—that his business had been that of real estate and banking and trading with farmers in Western Nebraska. He further testified that he could not re-finance the Skinner Company unless the contract was annulled, and that the stockholders could not hope to receive any return on their investment unless that was done, that the Skinner Company could not operate the plant and that it would not help him materially if the plant had to remain idle. In the suit brought by stockholders against the Dold Packing Company and the Skinner Packing Company, the receiver filed an answer for the Skinner Company, which he verified, on March 10, 1922, and in which he alleged that the contract between the Dold Company and the Skinner Company was authorized by the Board of Directors of the latter and by its common stockholders who were present at the 1920 adjourned annual meeting, that notice of said annual meeting was sent to all common stockholders, that the notice did not contain a reference to the contract, and that all acts done and performed by the Board of Directors and common stockholders (of the Skinner Company) relating to the execution of said lease were done in good faith and with a belief that all said acts were legal and proper and for the best interests of that company and its stockholders. We have no doubt that the Dold Company also acted in entire good faith in executing the contract and in all of its efforts in attempting to carry it out. There is no proof that its terms were unfair, unreasonable or unjust to either of the parties or that there was accident, mistake, imposition, overreaching or fraud in its execution.

[5] It is the general rule that a contract will not be set aside for improvidence unless the improvidence or inadequacy of consideration is so great as to furnish, of itself, convincing evidence of fraud. 9 C. J. 1174. We must hold that the finding of the Master, approved by the court, that the lease contract was inequitable and improvident to the Skinner Company, is without support. The other matters complained of in the receiver's petition consist of alleged breaches of the contract by the Dold Company which, if proved, would afford ground for recovery of damages. But they are not true. The contract provided that the Skinner Company, promptly following its execution, should fully complete its plant and equipment for the proper and economical conduct of the packing business, so that the plant should be in readiness

for use and operation as a packing plant, and in default of so doing the Dold Company might complete the machinery, equipment and facilities of the plant, and the cost and expense to the Dold Company should be immediately paid to it by the Skinner Company. The Master found:

"Additions, betterments and changes made in the plant by the Dold Company were made without securing the prior consent of or any notice to the Skinner Packing Company, and since the appointment of the receiver he has received no notice of any character from the Dold Packing Company regarding any proposed alterations, changes, etc."

As a matter of fact, the record shows that immediately on the execution of the contract the Dold Company brought an experienced man from Chicago, who made a complete inspection of the plant in company with the representatives of the Dold Company and at the request of the president of the Skinner Company to ascertain what changes and improvements should be made, and early in November, 1920, the Dold Company submitted to the president of the Skinner Company a written statement showing in detail the changes and improvements in the plant necessary for its proper and economical conduct. The list divided the proposed improvements and changes into three classes: those immediately needed, those needed in the near future, and those which might be installed later on, and, in a letter from the Dold Company to the Skinner Company accompanying the list, it urged immediate action and stated that the Dold Company expected to start killing in a very few days. The Skinner Company received the letter and list. Again, on February 5, 1921, a list of needed changes and improvements was submitted to the Skinner Packing Company. It failed to make any of them and the Dold Company put them in at its expense and charged the cost to the Skinner Company, all of which remains unpaid. After the receiver was appointed, the Dold Company submitted to him its accounts for improvements that it had made.

[6] Complaint is further made, and the Master found, that the Dold Company did not notify the receiver, after his appointment, of any further improvements or changes that it desired to have made in the plant. Some improvements may have been made during the receivership, but it does not appear what they were. Neither does it appear that the receiver ever took the trouble to make inquiry on that subject. He notified the Dold Company in July, 1921, that he would not carry out the contract. It would appear to have been an idle performance to have asked him to make any improvements after that date. There was uncontradicted evidence on the part of the Dold Company that all improvements that were made in the plant by it were necessary to the proper and economical operation of the plant. The Master also found that the Dold Company had broken the contract because it did not notify the Skinner Company of the additions and improvements that it had made in the separate buildings constituting the plant and the amount expended for each; he said that the lease did not contain a requirement that such notices should be given, but that, inasmuch as it was necessary for the Skinner Company to know those facts in order to protect itself under the 80% coinsurance clause of its policies, in event of loss by fire, which has not occurred, he would construe the contract as requiring the notices to be

given. It is not pretended that the Skinner Company, or the receiver, ever made any inquiry about the improvements added in the separate buildings, nor that they could not have easily ascertained those facts if they had made inquiry. It is further complained, and the Master sustained the complaint by his finding, that the Dold Company had broken the contract because it had permitted the Jacob Dold Company to turn over to it for its use a storage plant at Memphis where the products of the Omaha plant could be held and from there shipped to Southern markets, that the expense of maintaining that plant was charged to the Dold Company and a part of the loss sustained during the year was charged to that plant. He found that the Memphis branch had theretofore been maintained by the Jacob Dold Company at a loss. A branch was also opened in Chicago for distribution there of the Omaha products and a part of the total losses for the year amounting, as the Master found, to $362,000 included the losses allocated to those two branches. That also was found to be a breach of the contract and relied on as a ground for its cancellation. These charges, if all true, were at most breaches of the contract in minor respects, the proper remedy for which is in damages; and they afford no basis for rescission. Chitty on Contracts (11th Ed.) vol. 2, pp. 1091, 1092, says:

"But it is a clearly recognized principle, that if there be only partial failure of performance by one party to a contract, for which there may be compensation in damages, the contract is not put an end to. And the right to abandon the contract vests only in the party who has been guilty of no default; for a man cannot take advantage of his own wrong in order to put an end to a contract into which he has entered. So, such right, when it does exist, must be exercised within a reasonable time. Nor can a contract, in general, be rescinded in toto by one of the parties where both of them cannot be placed in the identical situation which they occupied when the contract was made."

Bishop on Contracts (Enlarged Ed.) § 828, after announcing that there cannot be rescission if there is only partial failure of performance by one party to a contract for which there may be compensation in damages, says:

"And, in general terms, the doctrine is, that the breach, to justify a recission, must be of a dependent covenant or willful or in a substantial part comprehending the root of the whole."

For a list of cases sustaining this fundamental principle, see 9 C. J. 1181.

[7] There is another principle that should have been applied in this case. As a condition to the rescission and cancellation of a contract, the complaining party must make restitution of the benefits which he has received under the contract. The Dold Company made extensive and valuable improvements to the Omaha plant. The parties recognized that they were needed. They were made in accordance with the provisions of the contract. The receiver did not tender to that company the amounts which it had expended in making those improvements, nor does the decree provide that he shall make payment therefor as a condition to its cancellation. It puts the Dold Company to the necessity and expense of having a judicial ascertainment of the reasonable value of those improvements. It does not provide that the cost and expenses thereof to the Dold Company shall be paid to it. 9 C. J. 1207; 24 A.

& E. Ency. of Law (2d Ed.) 645. On the merits of the case made by the receiver, we think the decree wholly unsustained.

[8] Another ground on which the receiver asked for cancellation, and sustained by the Master, was the failure of the corporation to give notice to stockholders that the lease contract would be considered at the meeting at which it was ratified. A statute of Maine, where the Skinner Packing Company was incorporated, reads thus:

"No corporation shall sell lease, consolidate or in any manner part with its franchises or its entire property or any of its property, corporate rights or privileges essential to the conduct of its corporate business and purposes otherwise than in the ordinary and usual course of its business except with the consent of its stockholders at an annual or special meeting, the call for which shall give notice of the proposed sale or consolidation. All such sales, leases and consolidations shall be subject to the provisions of this and the eleven following sections and to the prior liens of stockholders as therein defined."

The eleven following sections of the Maine statute demonstrate that their purpose is solely for the protection of stockholders. They provide a remedy and mode of procedure to each dissenting stockholder by which the value of his stock may be judicially ascertained, which must be paid to him by the corporation, and if not paid each dissenting stockholder is given a lien on the corporate assets for the amount so adjudged in his favor. A prerequisite to the right and remedy so given is that he shall have voted in the negative and shall file with the president, clerk or treasurer of the corporation, within one month from the day of such vote, his dissent. The corporation is then given one month after the dissents are filed to enter its petition with the Supreme Judicial Court, sitting in equity, setting forth the facts and names and residences of all dissenting stockholders whose dissents have been filed, making them parties, and praying that the court determine the value of the share so dissenting. On failure of the corporation to file the petition, any dissenting stockholder may, within one month thereafter, enter such petition for the same purpose. After the value of the dissenting shares has been determined, the corporation is given an opportunity to deposit the amount, whereupon said dissenting shares become the property of the corporation. The statute provides that any stockholder who fails to file his dissent shall be deemed to have assented. This statute does not give, and does not pretend to give, to the corporation any rights whatever. They are given solely for the benefit of stockholders. Westerlund v. Black Bear Mining Co., 203 Fed. 599, 121 C. C. A. 627. It seems too clear for argument that the corporation could not be heard to maintain a suit to cancel this contract because the specific notice required by the statute was not given, nor can the receiver, who sues in its behalf. Moreover, in the contract between the Skinner Company and the Dold Company we find this:

"The Skinner Company shall cause this agreement to be submitted to and ratified by its Board of Directors and its voting stockholders."

To permit it, or the receiver in its stead, to set up the regulatory requirements of the statute on corporate procedure is but to concede to it the right to take advantage of its own neglect of duty in

failing to comply with one of its obligations under the contract. The Dold Company might be entitled to be heard in a court of equity on that complaint, but not the Skinner Company and its receiver. No man can take advantage of his own wrong. The Maine statute did not declare contracts absolutely void, or even voidable, when made in non-compliance with its regulatory requirements. The receiver's petition should have been dismissed.

[9] In the suit brought by stockholders, the principal fact relied on by them for cancellation of the contract was the failure of the Skinner Packing Company to embody in the notice calling the annual meeting of common stockholders, at an adjourned session of which the lease contract was ratified, a specific statement that the lease contract would be submitted at that meeting for ratification. Of the five stockholders who brought that suit, only one of them owned common stock and he held only eight shares; the other four could not vote and could not have availed themselves of the provisions of the Maine statute. They alleged that they brought the suit in their own behalf and in behalf of all other citizens of Nebraska similarly situated. The Dold Company's offer to show that their suit was collusive, that they had been indemnified against all costs and expenses in bringing and maintaining it, was denied. No other stockholder joined them in that suit or came forward to aid them in its prosecution, but stockholders owning 466 shares of common and 312 shares of preferred intervened and protested against the proceedings. One of the five complaining stockholders was a creditor holding bonds of the Skinner Packing Company secured by mortgage on its property. Besides that, the Skinner Company was amply solvent. The value of its property was many times in excess of its liabilities. The Master found that it owed about $250,000 when the receiver was appointed, and at the time of the hearing about $350,-000. The receiver testified that some of its indebtedness was not found out until after his appointment. A part of the increase was cost and expenses in receivership. It cannot be believed that there was any cause for a suit by him as bondholder or that any lawyer who had a proper regard for his rights as such would have advised him to sue on that account. However that may be, that fact gave him no status as a complainant under the Maine statute on which he and his coplaintiffs relied. As already pointed out, that statute was clearly for the protection of stockholders who are entitled to vote, and the remedy which it provides is extended to them only. It regulates corporate procedure in a particular respect, but it imposes no penalty for non-compliance. Of course, a stockholder entitled to vote cannot bring himself within the terms of the statute if he does not vote or is not given an opportunity, contemplated by the required statutory notice, to vote.

We will consider the stockholders' complaint on the assumption it makes that both common and preferred stockholders can avoid the contract if the statutory notice is not given. They brought their suit fourteen months after the Dold Company took possession of the plant and began operation. During those months it did a large business, in which it had invested all of its capital and surplus and had borrowed

and put into the business other large sums. At the time the suit was brought it had in process of curing at the plant a large amount of its products. It had expended time and labor in building up a trade for those products and for its future business. These stockholders asked the court to cancel the contract between it and the Skinner Company because of the failure to give the statutory notice, to require the Dold Company to surrender possession to the receiver and to pay him rental during the occupancy. The consequences to the Dold Company of such an order and decree cannot be doubted. It would necessarily result in heavy losses, if not bankruptcy. If they had brought such a suit immediately after the contract was executed and had succeeded therein, losses to the Dold Company would have been comparatively slight. Immediately after the execution of the contract in October, 1920, the Skinner Company, in a full page publication in one of the leading and widely distributed newspapers issued at Omaha, gave notice that it had turned its packing plant over to the Dold Company for a term of years on a profit-sharing lease contract. It also sent at once through the mail a notice to all stockholders, both common and preferred, advising them that it had made the lease contract. None of these complaining stockholders denied receiving the notice sent to them and reading the notice published in the newspaper. Some of them admitted it, but, as an excuse for inaction, said they had never read the lease contract. The Dold Company had a right to rely upon the written agreement that the Skinner Company would cause the contract to be submitted to and ratified by its voting stockholders. If the complaining stockholders were not fully informed by the open and notorious possession of the plant, by the notice published in the newspaper and by the notices sent them through the mails, they were put upon further inquiry, but they chose to sit by silently for fourteen months waiting for results in operation under the contract. The Supreme Court, in Kirk v. Hamilton, 102 U. S. 68, 26 L. Ed. 79, quotes approvingly from the opinion of Chancellor Kent in Wendell v. Van Rensselaer, 1 Johns. Ch. (N. Y.) 344, this:

"There is no principle better established, in this court, nor one founded on more solid considerations of equity and public utility, than that which declares, that if one man, knowingly, though he does it passively, by looking on, suffers another to purchase and expend money on land under an erroneous opinion of title without making known his own claim, shall not afterwards be permitted to exercise his legal right against such person. It would be an act of fraud and injustice, and his conscience is bound by this equitable estoppel."

On the plainest principles, by their laches, they were estopped to bring this suit, and should be held to have acquiesced in the lease contract. Westerlund v. Mining Co., 203 Fed. 599, 121 C. C. A. 627; Elder v. Mining Co. (C. C. A.) 280 Fed. 569; Watt's Appeal, 78 Pa. 370; Hill v. Railroad Co., 143 N. C. 539, 55 S. E. 854, 860, 9 L. R. A. (N. S.) 417; Rabe v. Dunlap, 51 N. J. Eq. 40, 25 Atl. 959; Bishop v. Kent & Stanley Co., 20 R. I. 680, 41 Atl. 255; Sturm v. Wiess (C. C. A.) 273 Fed. 457; 2 Pomeroy's Eq. Jurisp. §§ 816–820, 965; 16 Cyc. 158, 162.

[10] The complaining stockholders also set up and relied upon a Nebraska statute which provides that before a foreign corporation shall be authorized to engage in any kind of business in that state it shall make and file a certificate with the Secretary of State and with the register of deeds of the county in which its principal place of business in the state shall be located, designating therein its principal place of business and appointing an agent in that state. They claim that the Dold Company did not comply with that statute, and for that reason the contract should be cancelled. That company did not take possession of the Omaha plant until November 1, 1920, and began a few days later to operate it. It filed the certificate required by the Nebraska statute on October 29, and the insistence of the complaining stockholders is based on the fact that three days before the certificate was filed the contract between the Dold Company and the Skinner Company was executed, and that the execution of that contract was the engaging in business by the Dold Company in the state of Nebraska. The contention calls for a strained and unreasonable construction. The business of the Dold Company in which it expected to engage in Nebraska was to operate the plant, provided the contract should be finally executed. It could not know until it was executed that it would engage in business in the state of Nebraska. The statute did not declare all acts of the corporation done in the state prior to filing the certificate void. It prohibited a foreign corporation from engaging in business, until it filed the certificate. There was also a claim that the Dold Company neglected to file its articles of incorporation with the Secretary of State in Nebraska. We think the statutes of that state contain no such requirement. Counsel for the Dold Company testified that he sent the articles of incorporation to Lincoln and had the question referred to the Secretary of State as to whether they should be filed with him, and that the Secretary advised that it was not necessary to do so.

[11] We have considered the case, both as to the receiver and the complaining stockholders, as though the procedure against the Dold Company was proper. We have no doubt that it was improper. The Dold Company was never made a party to the receivership proceedings, and not being a party to those proceedings it had a right to have the controversies raised with it by the receiver and stockholders litigated in plenary actions, separate and apart from the proceedings in receivership. It was in possession of the plant under claim of right thereto when the receiver was appointed. In Davis v. Gray, 16 Wall. 203, 21 L. Ed. 447, it is said:

"Where property, in the possession of a third person, is claimed by the receiver, the complainant must make such person a party by amending the bill, or the receiver must proceed against him by suit in the ordinary way."

For other cases announcing the same principle, see Wheaton v. Daily Telegraph Co., 124 Fed. 61, 59 C. C. A. 427; Mississippi Valley Trust Co. v. Railway Steel Spring Co., 258 Fed. 346, 354, 169 C. C. A. 362; Fidelity & Deposit Co. v. Johnson (D. C.) 275 Fed. 112; Horn v. Railroad Co. (C. C.) 151 Fed. 626.

[12, 13] Furthermore, the writ of assistance, awarded by the decree in the receivership cause, could not issue against one who was not a party on the record to that proceeding. Howard v. Ry. Co., 101 U. S. 837, 848, 25 L. Ed. 1081; Terrell v. Allison, 21 Wall. 289, 22 L. Ed. 634; Thompson v. Smith, 1 Dill. 458, Fed. Cas. No. 13,977. The complaining stockholders brought an independent suit. It was entered on the court records as such, and the court, over the objection of the Dold Company, consolidated it with the petition of the receiver filed in the receivership cause. The receiver could not prosecute the cause of action set up by the complaining stockholders, he had no such cause of action; and the complaining stockholders could not prosecute the cause of action set up by the receiver, they had no such cause of action, as we have attempted to point out. Nevertheless, the court, over objection, made the consolidation, consolidating the stockholders' suit with the receiver's petition filed in the receivership cause, No. 270—In Equity, to which the Dold Packing Company was at no time made a party, referred the consolidated cause to the Master and entered a decree in the consolidated cause. Exceptions were saved to all of these orders and action of the court. They constitute reversible error.

We think the position taken by the intervening stockholders was the right one. They insisted that when the receiver, within two months after his appointment, succeeded in removing the president of the company and his associates on the Board of Directors who had been utilizing the company for their personal advantage and benefit, the purposes for which the receivership was instituted had been accomplished, that there was nothing else that could be made the subject of judicial determination in the receivership cause; and that the receivership should be wound up and the company and its affairs restored to its stockholders. In Pusey & Jones Co. v. Hanssen, 261 U. S. 491, 43 Sup. Ct. 454, 67 L. Ed. 763, it is said:

"Whether the debtor be an individual or a corporation, the appointment of a receiver is merely an ancillary and incidental remedy. The receivership is not final relief. The appointment determines no substantive right; nor is it a step in the determination of such a right. It is a means of preserving property which may ultimately be applied toward the satisfaction of substantive rights."

See also Brictson Mfg. Co. v. Close (C. C. A.) 280 Fed. 297; Myers v. Occidental Oil Corporation (D. C.) 288 Fed. 997.

[14] Property in receivership is in the custody of the court, and while the court may approve a reorganization of the business affairs of the property which it holds in receivership, made and agreed to by those who are interested in it, we do not understand that it is the duty or province of a court to take into its possession and hold the business affairs of others for the primary purpose of reorganizing that business. This record discloses that to be the remaining purpose in the receivership cause, and, however well the receiver might discharge the assumed duty, we think it properly belongs to the stockholders of the company, whose judgment ought to dictate what shall be done in that regard.

The decree is reversed, with directions to dismiss the petition of the receiver and the stockholder who was permitted to join with him, and the complaint of the other five stockholders, and to adjudge all of the costs in the proceedings against them.

---

⊚⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes